**In re BULLOCK.**

**Miscellaneous No. 8-52.**

United States District Court

District of Columbia.

March 11, 1952.

---

1. Reference is made to that class of fees such as a license fee.

Oliver Gasch, John F. Doyle, Assts. Corp. Counsel, Washington, D. C., for District of Columbia Commissioners.

Charles E. Ford, Washington, D. C., for Albert I. Bullock.

KIRKLAND, Judge.

The Commissioners of the District of Columbia, through the Corporation Counsel, filed a petition seeking to have the minutes of the Grand Jury made available, in order to determine if dereliction of duty on the part of Inspector Albert I. Bullock existed as a policeman and as one of the supervisory officials of the Metropolitan Police Department.

The respondent refused voluntarily to have the minutes of the Grand Jury opened and in his answer in general he raised in substance the following three contentions:

1. That the designation of an advisory board of three members of the local Bar to "study the record of the Nelson Case" had superseded the right of the Commissioners

and their duly appointed representatives to have the minutes.

2. That by the Commissioners' order No. 302,838/9 it was shown that the United States Attorney "had informally advised the Commissioners" of the contents of the minutes of the Grand Jury and that thereby in fact had revealed the said minutes, and

3. That the minutes of the Grand Jury as a matter of law should not be revealed.

The petitioners only called the respondent in their case as a witness, but the respondent called the Secretary of the Board of Commissioners, G. M. Thornett, Commissioner F. Joseph Donohue, Francis W. Hill, Jr., Esq., a member of the Bar Committee, Major Robert B. Murray, Superintendent of the Metropolitan Police Department, and the Assistant United States Attorneys, John W. Fihelly, Esq., and Alfred Hantman, Esq.

The authority for the Court to disclose the minutes of the Grand Jury must be governed by Fed.Rules Crim.Proc. Rule 6(e), Title 18 U.S.C.A., which provides that the secrecy surrounding Grand Jury proceedings may be unveiled:

A. "* * * preliminarily to or in connection with a judicial proceeding" or

B. "* * * at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

Since the respondent declined voluntarily to consent to the disclosure of the Grand !Jury minutes, this opinion will be concerned with the Court's power under the first part of Criminal Rule 6(e).

■ The duty and authority to take disciplinary action for dereliction of duty against members of the Metropolitan Police Department is one which rests with the Board of Commissioners, who hold that power by reason of Title 4, Section 122 of the D.C.Code. The Board may not lawfully delegate that power. However, there is nothing to prevent the Board of Commissioners from seeking outside advisory opinions from members of the local Bar Association or any other group. Such a Committee of local Bar members would not be a part of "the Commissioners and their designated representatives" as set forth in respondent's exhibit 1, the Commissioners own order No. 302,838/9, since they are not bona fide employees of the Municipal Government for the District of Columbia. The Court holds as a matter of law that the Commissioners have not ousted themselves of their statutory powers by the appointment of a three member outside committee to render them an advisory opinion.

■ The testimony of the two Assistant United States Attorneys and Mr. Francis W. Hill, Jr., as well as Commissioner Donohue indicated that the minutes of the Grand Jury have not, in fact, been disclosed. At the most there appears to have been a general discussion in the United States Attorney's Office. One of the Assistant United States Attorneys, Mr. Hantman, had prepared a typewritten index-digest of the testimony and had collected and summarized it in a small loose leaf binder, which he produced in open Court, in ten minutes after being requested to do so while he was on the witness stand. Mr. Hantman further testified it had not been out of the possession of the assistants who had handled the testimony before the Grand Jury. Accordingly the Court finds that the contents of the minutes of the Grand Jury have not been disclosed.

■ If a literal interpretation of F.R. C.P. 6(e) were given it would appear that under the circumstances the Court has no authority to grant the petition before it. See United States v. Owen, D.C., 11 F.R.D. 371, 373. However, by way of interpretation the Federal Courts have extended their jurisdiction so that they may remove the seal of privacy from Grand Jury proceedings when in the Court's discretion the furtherance of justice requires it. (Italics supplied.) Metzler v. United States, 9 Cir., 64 F.2d 203; United States v. Alper, 2 Cir., 156 F.2d 222; United States v. Crolich, D.C., 101 F.Supp. 782. But the power to grant an inspection of Grand Jury records and proceedings is a power to be "sparingly exercised". 23 C.J.S., Criminal Law, § 956, pages 265–266; United States v. Herzig,

D.C., 26 F.2d 487; United States v. Owen, supra.

The common law reasons for secrecy were several and may be stated thusly:

1. To prevent the escape of those indicted;

2. To insure the grand jury freedom in its deliberations;

3. To prevent any persons from annoying the grand jurors;

4. To prevent subornation of perjury with witnesses who may testify before the grand jury and later appear at the trial of those indicted by it;

5. To encourage free and untrammeled disclosures by persons who have some information with respect to the commission of crimes, and,

6. To protect the innocent person, who is accused but exonerated, from the disclosure of the fact that he has been under investigation.

■ Secrecy has characterized Grand Jury proceedings from earliest times. Secrecy of proceedings of a Grand Jury is fundamental to our criminal procedure, United States v. Papaioanu, D.C., 10 F.R. D. 517. Exceptions are made only for such purposes as impeachment of a witness or prosecution for perjury statements. The importance of preventing numerous inroads into the historic privacy of the proceedings of a Grand Jury was discussed at length in Application of Bar Association of Erie County, 1944, 182 Misc. 529, 47 N.Y.S.2d 213, 218. An application for inspection of Grand Jury minutes was sought by the New York Erie County Bar Association. The New York Court refused, noting that to do otherwise would permit the disadvantages to the public interest to outweigh any possible advantages. Quoting from the text of the decision, the Court stated: "As against the granting of this motion is the historic privacy of the grand jury proceedings. For hundreds of years this greatest single instrumentality of human freedom and liberty known to our form of government has enjoyed the guarantee of immunity from accountability, recrimination and persecution by those against whom accusations were made. This immunity has been enjoyed because of the historic secrecy surrounding the proceedings of the grand jury. In this state this secrecy is established by statute, and penalties may be imposed upon one violating that statute. Without this guarantee a witness may well hesitate to testify against one in an official or exalted position, and a talisman may fail in his sworn duty and the public interest would suffer thereby."

In re Special Report of Grand Jury of Erie County, 1948, 192 Misc. 857, 77 N.Y. S.2d 438, 441, where grand jury testimony was sought for the purposes of an administrative hearing, the Court denied the request and stated its attitude as follows: "Secrecy is certainly necessary in order to encourage Grand Jurors to faithfully and fearlessly perform their duties. This cloak of secrecy tends to loosen the tongues of reluctant witnesses to testify before the Grand Jury where without it they might hesitate to so do and to further extend the exceptions to this rule of secrecy might hamper the wheels of criminal justice. * * * future witnesses [might] be reluctant to testify freely before a grand jury in the future."

■ In United States v. American Medical Ass'n, D.C., 1939, 26 F.Supp. 429, 430, decided in the District Court of the United States for the District of Columbia, Judge Proctor expressed the rule as to the secrecy surrounding Grand Jury proceedings in the following words: "Legal history suggests nothing to qualify the literal meaning of the words imposing secrecy. * * * Neither indictment, arrest of the accused, nor expiration of the jury term will operate to release a juror from the oath of secrecy * * *. That can only be done by a court acting in a given case when in its judgment the ends of justice so require."

■ In cases of this nature, the sole question to be resolved is which policy shall be served to bring about justice, the one requiring secrecy or the other permitting disclosure?

While on the stand, the Senior Assistant District Attorney, Mr. Fihelly, asserted that no competent testimony was omitted in the criminal trial against Inspector Bullock. Apparently, the substance of all testimony given before the Grand Jury which indicted Inspector Bullock was subsequently bared in open court. The records of the criminal case are available to both sides for inspection. In view of this fact and by reason of the common-law emphasis on secrecy this Court takes the position that disclosures made before the Grand Jury by witnesses other than Inspector Bullock shall retain their veil of secrecy.

With regard to Inspector Bullock the Court takes a different attitude. The right to an office or employment with the Government or any of its agencies is not a "vested property right". Ludolph v. Board of Police Commissioners, 30 Cal.App.2d 211, 86 P.2d 118, 121; Application of Scro, 200 Misc. 688, 108 N.Y.S.2d 305, 307. In the latter case Judge Leibowitz in his opinion stated: "If they (the police officers) were guilty of the reprehensible conduct attributed to them, namely, of accepting graft in return for protecting Gross in his illegal business, their continued retention on the police force would have made law enforcement a mockery. Public interest, therefore, required that this testimony be made available to the Police Commissioner, to be used by him within limits prescribed by law."

The Commissioners of the District of Columbia and their duly appointed representatives have the duty and responsibility to supervise the Metropolitan Police Department, a local governmental agency, and to take necessary steps to maintain its good name. In the course of exercising this power the Superintendent of Police directed Inspector Bullock to state if he had any affiliation or connection with the illegal operations of the Charles Nelson organization. Such information was important and self-evident as to its purpose. Although the Inspector signed a jurat as to the truth and full disclosure of the answers in the questionnaire he testified at the hearing of this cause that his answers "may have been incomplete". Failure of a high ranking officer to submit completely to a superior's order is a direct rebuke to public interest. Where public interest is superior to the purpose of the secrecy of Grand Jury testimony, the latter protection will be disregarded and the minutes divulged within limits prescribed by law. To do otherwise would be an abuse of discretion and injurious to public interest. Cf. In re Crain, 139 Misc. 799, 250 N.Y.S. 249.

Accordingly, the official stenographer or the United States Attorney will be directed to make the Grand Jury testimony of Inspector Bullock available to the District of Columbia Commissioners and their duly qualified governmental representatives. Counsel will prepare a suitable order.